IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-785 T
(Judge Emily C. Hewitt)

(into which has been consolidated: No. 05-786 T, No. 05-787 T, No. 05-788 T, No. 05-789 T, No. 05-790 T, No. 05-791 T, No. 05-792 T)

FFRE HOLDINGS, LLC, by and through Larry D. Russell and Janet M. Russell, as Trustees for the Larry D. Russell and Janet M. Russell Living Trust, a Partner Other Than the Tax Matters Partner,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

JOINT PRELIMINARY STATUS REPORT

Pursuant to Appendix A, Part III, ¶¶ 4 and 5, RCFC, the parties hereby provide the Joint Preliminary Status Report:

¶ 4

(a) Jurisdiction:

Plaintiffs: Plaintiffs contend that this Court has jurisdiction over this claim pursuant to 28 U.S.C. § 1508 and 26 U.S.C. § 6226(b). Under 28 U.S.C. § 1508, the Court of Federal Claims has jurisdiction to hear and render judgment upon any petition under Sections 6226 or 6228 of the Internal Revenue Code of 1986. In the instant consolidated cases, Final Partnership Administrative Adjustments ("FPAAs") were

issued by the Internal Revenue Service ("IRS") for the tax years 1999 and 2000 to each of: FFRE Holdings, LLC; FFRE Acquisitions, LLC; FFRE Management, LLC; and for tax year 2001 to FFRE Holdings, LLC and FFRE Management, LLC. Each of the partnerships, by and through the notice partner (as that term is defined in 26 U.S.C. §6231(a)(8)) filing on behalf of each partnership, filed their respective petitions under 26 U.S.C. § 6226(b). Each of the plaintiff partners pursuant to 26 U.S.C. § 6226(e)(1) timely deposited with the IRS a good faith estimate of their respective tax liability if the FPAA were upheld. While Defendant categorizes these deposits as "de minimus," it does not argue that the deposits are legally inadequate.

Defendant: The proper plaintiff in each of these consolidated cases is the partner bringing this TEFRA proceeding pursuant to 28 U.S.C. § 1508 and 26 U.S.C. § 6226. Section 6226(e) requires a deposit by such partner plaintiff prior to the filing of the petition/complaint. Where the filing partner is a "pass-thru" entity, this provision requires each indirect partner holding an interest (in the partnership to which the contested FPAA was issued) through the filing pass-thru partner to make the jurisdictional deposit. See Treas. Reg. § 301.6226(e)-1(a)(1). The alleged jurisdictional deposits in the consolidated cases are de minimus (a total of $311). The transactions at issue sought to shelter approximately $12,000,000 in capital gain income from taxation. The United States is continuing to review the question whether the jurisdictional deposit requirements of § 6226(e) were satisfied prior to the filing of these consolidated complaints.

(b) Consolidation: These cases have already been consolidated.

(c) Bifurcation of liability and damages:

Plaintiffs: Plaintiffs intend to file a formal motion pursuant to RCFC, Rule 42(b), requesting separate trials and discovery of the following issues: (1) the determination of whether the tax positions taken by the IRS in the FPAAs are erroneous, i.e., the substantive tax liability of Plaintiffs; and (2) liability for, and the proper amount of, penalties assessed by the IRS in the FPAAs.

Separate trials on the issues of tax liabilities and penalties are necessary to avoid undue prejudice to the Plaintiffs. While Plaintiffs were required in their respective Complaints to assert the defense of reliance on the advice of legal and tax professionals (or risk waiving it), this issue becomes relevant only after a trier of fact has determined that Plaintiffs are liable for the taxes allegedly owed. If, however, Plaintiffs prevail on the substantive tax issues, the issue of penalties becomes moot.

The prejudice Plaintiffs assert derives from the fact that the documents, some comprising attorney's work product, contain highly privileged legal analysis, strategies and theories that would reveal aspects of Plaintiffs' trial plans. Courts have recognized that the trial court should give serious consideration to separating trials of substantive issues from penalty issues which derive from such substantive issues. see Quantum Corporation v. Tandon Corporation, 940 F. 2d 642, 643-644 (Fed. Cir. 1991); Kos Pharmaceuticals v. Barr Laboratories, 218 F.R.D. 387 (S.D.N.Y. 2003).

In the present case, Plaintiffs should not be required to make an election of whether to disclose privileged document(s) in advance of a finding that the taxes assessed in the FPAA are in fact owed since: (1) the information in the privileged document(s) is not directly relevant to the issue of the substantive tax liability of

Plaintiffs; (2) the privileged document(s) would not otherwise have to be produced by Plaintiffs in connection with the issue of tax liability; (3) disclosure of the privileged information could be unfairly prejudicial to Plaintiffs in connection with the determination of whether Plaintiffs have a tax liability; and (4) the document(s) are only relevant to the issue of penalties.

In the event that it is determined that Plaintiffs are liable on the substantive tax issues, Plaintiffs may elect at that time to disclose document(s) protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Those document(s) may evidence a complete defense to liability for penalties, or may evidence the proper assessment of a penalty rate lower than that claimed by the IRS in the FPAAs.

Separate trials on the issues of tax liabilities and penalties would further convenience and be conducive to expedition and economy in this case**.** As set forth above, if no taxes are due, as Plaintiffs contend, there is no liability for penalties, thus rendering the penalties issues moot. This would obviate the need for a significant amount of work on the part of both Plaintiffs and Defendant relating to discovery and trial of the penalties issues. It would be a waste of the Court's and the parties' resources to litigate this issue before it is ripe. If, on the other hand, a determination is made that taxes are owed by Plaintiffs, the parties would be free to proceed with discovery and trial of the issues relating to penalties.

Plaintiffs suggest that bifurcation procedurally take place as follows: (1) Discovery proceeds on all issues concerning the tax liability of Plaintiffs; (2) trial takes place on the issue of the tax liability of Plaintiffs; (3) if a judicial determination is

made that Plaintiffs have a tax liability, then Plaintiffs will be prepared to make an election whether to waive the privileges as to privileged document(s); (4) if the Plaintiffs elect to waive the privileges, the document(s) will be immediately produced; (5) Defendant can seek depositions or other discovery based upon the content of the document(s) that have been produced; and (6) trial will continue on the issue of Plaintiffs' respective liability for penalties.

Defendant: This is a TEFRA partnership proceeding to review the determinations of the Internal Revenue Service set forth in Notices of Final Partnership Administrative Adjustments (FPAA). As such, there are no distinct "liability" and "damages" issues before the Court.

With respect to plaintiffs' stated intent to file a motion to bifurcate discovery and trial on the adjustments made in the FPAAs on which plaintiffs' petitions for readjustment are based and the applicability of accuracy penalties to the adjustments, the United States asserts that it will oppose such a motion if filed. The United States doubts plaintiffs will be able to satisfy their burden to demonstrate that bifurcation will serve the goals of FRCP 42(b), i.e., promoting economy and avoiding prejudice to either party. See e.g. F & G Scrolling Mouse, L.L.C. v. IBM Corp., 190 F.R.D. 385, 387 (M.D.N.C. 1999) ("The party requesting separate trials bears the burden of convincing the court that such an exercise of discretion will (1) promote greater convenience to the parties, witnesses, jurors, and the court, (2) be conducive to expedition and economy, and (3) not result in undue prejudice to any party").

Bifurcation generally is to be avoided in the absence of guiding experience. See e.g. McDaniel v. Anheuser-Busch, Inc., 987 F.2d 298, 304 (5th Cir. 1993) ("Under Rule

42(b), a separate trial may be ordered .... Separation of issues, however, is not the usual course that should be followed"); Fed. R. Civ. P. 42 advisory committee's note to 1966 Amendment. This is a tax case and, to date, no court has bifurcated substantive tax matters and penalties applicable thereto into separate trials, much less in the present context of a TEFRA proceeding to be tried to the Court. The primary grounds asserted for plaintiffs' motion - prejudice stemming from disclosure of allegedly privileged communications and documents - is illusory, as fairness requires finding such privileges waived by plaintiffs' pleaded reliance-on-counsel defense to accuracy-related penalties. See In re G-I Holdings, Inc., 218 F.R.D. 428, 430-34 (D.N.J. 2003) (holding taxpayers waived attorney client privilege in response to the Government's contention interrogatories by asserting reliance on counsel as a defense).

(d) Deferral of proceedings:

Plaintiffs: Plaintiffs desire to reach a final determination of the substantive issues in this matter as soon as practicable. As set forth in the FPAAs, the government seeks to impose a significant tax obligation on Plaintiffs. Although Plaintiffs vigorously dispute that there is any such obligation, Plaintiffs must nevertheless financially plan for the possibility of such a finding from this Court. In light of that potential liability, it would be inequitable to prejudice Plaintiffs by leaving this matter open for any significant period of time.

These actions were filed on July 27, 2005. Due to the government's statutory extension of time to respond to complaints filed against it, which was further extended due to the government's stated need for even more time to formulate a response, the

Plaintiffs have already experienced a significant delay in achieving an adjudication of this matter. It should be noted that none of the delay is attributable to Plaintiffs.

This action relates to tax year 2000. Plaintiffs filed their respective returns in 2001. Five years later, Plaintiffs should not still have potential tax liabilities looming over them from that tax year.

Plaintiffs therefore oppose Defendant's view that these proceedings should be stayed as the requested stay would further delay Plaintiffs right to have their respective matters promptly adjudicated.

Defendant: The United States' view is that this proceeding should be stayed due to a related criminal proceeding brought by the Office of the United States Attorney for the Southern District of New York – United States v. Stein, et. al. (No. S1 05 Cr 888, S.D.N.Y.). These consolidated cases involve a tax shelter transaction promoted by David Greenberg, a former KPMG partner who is presently a criminal defendant in the Stein case. He is obviously a key witness in these cases. Upon information and belief, Greenberg worked with a co-promoter of this tax shelter product, William Goddard, the name partner of plaintiffs' counsel. Upon further information and belief, the undersigned counsel believes that Goddard had multiple dealings with Greenberg with respect to this and other tax shelters. Upon information and belief, Goddard's law firm Lee Goddard & Duffy is the "Orange County Law Firm" referred to in paragraph 58 of the superseding indictment. Goddard's co-promotion of the tax shelter transaction at issue in these consolidated cases is of great importance here and he is a likely witness in this litigation. Due to these factual circumstances, and others, two cases in the Court of Federal Claims involving the same tax shelter transaction are currently stayed due to

the criminal proceedings in Stein. These cases are MIPW v. United States, Fed. Cl. No. 05-304 T, and Instashred Security Services, et. al. v. United States, Fed. Cl. Nos. 05-299 to 05-303 T. Motions to stay proceedings involving the same tax shelter transaction, for the same reasons stated herein, are anticipated shortly in two district court cases, AWS Management, et. al. v. United States, No. 05–010506 CW (N.D. CA. 2005) and DR Management v. United States, No.05-01010 M.C. (N.D. CA. 2005).[1]

The trial in the Stein case is currently set to begin on September 11, 2006. That case is the largest criminal tax case ever filed by the United States and involves criminal charges against accountants and lawyers, including the former leadership of KPMG, one of the of the largest accounting firms in the world. This civil case overlaps with the larger criminal case. Although the particular tax shelter at issue here is not described in the Stein indictment, that criminal proceeding directly impacts this case, as discussed above. Continuing with this case before the conclusion of the criminal trial thus would be prejudicial to the United States. See Campbell v. Eastland, 307 F.2d 478 (5th Cir. 1962), cert. denied, 371 U.S. 955 (1963); Afro-Lecon, Inc. v. United States, 820 F.2d 1198 (Fed. Cir. 1987); Penden v. United States, 512 F.2d 1099, 1104 (Ct. Cl. 1975).

---

1/ In other civil cases involving different KPMG-sponsored tax shelters but also related to the Stein case, stays of the civil proceedings have recently been granted. Prestop Holdings, LLC, v. United States, Fed. Cl. No. 05-576 T (unpublished order dated December 8, 2005); Presidio Advisors, LLC, Norvest Ltd. v. United States, Fed. Cl. No. 05-411 T (Order of November 17, 2005); Belford Strategic Investment Fund and Presidio Growth LLC v. United States, No. C-04-4309 VRW, (N.D. Cal.), 2005 WL 3278597 (N.D. Cal.), November 7, 2005. The Tax Court denied a stay of proceedings in Keith A. and Laura B. Tucker v. Commissioner, Docket No. 12307-04, another KPMG tax shelter case on December 13, 2005.

The prejudice to the United States if this case were to proceed is far more significant than the supposed prejudice described by the plaintiffs above, which is not well founded.[2] Given the de minimis deposits made by the plaintiffs ($311), the plaintiffs cannot even argue that they have lost the use of funds while these proceedings are stayed in favor of the criminal matter in accordance with well-established public policy.

Plaintiffs' demand for an abbreviated discovery period and a trial before the criminal trial scheduled to begin on September 11, 2006, also is clearly prejudicial to the United States. A complex tax shelter case such as this would ordinarily require at least twelve months of fact discovery. It is obvious here that Greenberg and Goddard will not be available to testify, at deposition or trial, prior to the conclusion of the criminal proceeding, or if they did choose to participate in the civil proceedings, the purpose would be to take advantage of the civil discovery rules to prejudice the criminal prosecution. In either circumstance, a stay of the civil proceeding in favor of the criminal proceeding is the appropriate course of action, not a truncated discovery period and a civil trial just before the criminal trial.

(e) <u>Remand or suspension</u>:

<u>Plaintiffs</u>: Plaintiffs contend that there is no basis for remanding these consolidated cases.

---

2/ The FPAAs were timely issued on April 14, 2005. The Tax Matters Partners could have filed suit at any time thereafter, but plaintiffs did not file their complaints until more than 3 months later.

Defendant: There is no basis for remand. The need to suspend this case pending the conclusion of the criminal proceedings in the Southern District of New York is discussed in paragraph (d) above.

(f) Additional parties: There are no additional parties to be joined in this action.

(g) Dispositive motions:

The parties do not intend to file dispositive motions at this time.

(h) Factual and legal issues:

Plaintiffs: FFRE Acquisitions, LLC ("Acquisitions") owned an interest in certain assets. During 1999, Acquisitions redeemed a portion of FFRE Holdings, LLC's ("Holdings") member interest in Acquisitions and other members of contributed their respective interests in Acquisitions to FFRE Management, LLC ("Management"). Also in 1999, a proportional share of Holdings' remaining ownership interest in Acquisitions was purchased by Management.

During the year in question, Acquisitions and Management also made an election under Internal Revenue Code Section 754 and adjusted the tax basis of their assets as required thereunder.

In 2000, after all of Acquisitions' assets had been sold or otherwise disposed of, Acquisitions was dissolved and terminated.

Each of the entities involved in the transactions were formed and existed for legitimate business purposes. Each of the transactions entered into by the entities had economic substance and were entered into for legitimate business purposes.

In connection with engaging in the transactions referenced above, Plaintiffs sought and justifiably relied upon the advice of legal and tax professionals. The tax

professional was provided with and had knowledge of all the relevant facts of the proposed transactions. As a result, even if it were to be determined that taxes are owed by the Plaintiffs, Plaintiffs should not be subject to the penalties sought by Defendant.

Plaintiffs dispute the contentions set forth in Defendant's statement below. The transactions at issue in this case do not constitute an "abusive tax shelter scheme," but rather constitute legitimate transactions within the provisions of the tax code that achieved several purposes, among them certain asset protection and estate planning goals. Defendant's positions taken in the FPAAs and described in general below, including but not limited to, the contentions that the non-negotiable promissory notes at issue did not constitute liabilities of the partnership, and that the economic substance/sham transaction doctrine and step transaction doctrine provide grounds for disregarding the step-up in basis, are erroneous and ignore the factual and legal merits of Plaintiffs' respective tax positions.

Defendant: This case concerns an abusive tax shelter scheme designed to avoid federal income taxes with respect to capital gains realized upon the sale of real estate. Four individual investors are involved, i.e. Fernald, Filizetti, Russell, and Engles (FFRE). In a complex series of transactions, the individual investors acted through trusts and limited partnerships to artificially increase the tax basis of their property interests (which had been converted to stock in a publicly traded REIT) in order to avoid capital gains taxes on approximately $12,000,000.

The Internal Revenue Service identified this series of transactions as a tax shelter promoted by a KPMG partner, David Greenberg. Like other transactions following this tax shelter's template, the FFRE transactions used entities identified as

"Holdings," "Acquisitions," and "Management[3]." The FFRE transactions are premised on the issuance of "redemption notes" to allegedly increase the outside basis of partners holding an interest in a partnership and an election pursuant to Section 754 of the Internal Revenue Code that allegedly entitled the "Acquisitions" entity to increase the partnership's basis in the assets–and thus avoid capital gains taxes upon disposition–pursuant to Section 743(b).

The Internal Revenue Service issued eight Notices of Final Partnership Administrative Adjustment (FPAA) which determined, inter alia, that the redemption notes did not qualify as "liabilities of the partnership" and therefore there was no step up in basis. The IRS also made the determination that the partnerships (LLCs) were shams and not partnerships for federal income tax purposes, the partnerships failed to substantiate claimed deductions and values of stock, and the partnerships failed to establish the amount of alleged partners' capital accounts. In addition, the IRS determined that a 40% penalty shall be imposed for gross valuation misstatement, pursuant to Sections 6662(a), 6662(b)(3) , 6662(e), and 6662(h), or in the alternative a 20% penalty shall be imposed on the grounds of negligence, substantial understatement of income tax, and substantial valuation misstatement, pursuant to Section 6662.

(I) Settlement:

[3] The entities are actually "limited liability companies" (LLC) which elect to be taxed as partnerships. To avoid confusion about the Internal Revenue code provisions applicable, the entities are referred to as "partnerships."

Plaintiffs: Plaintiffs believe that all cases are amenable to some type of ADR. Plaintiffs believe that Defendant is unreasonably taking the position that all tax cases that it contends are "related," regardless of the different factual situations between them, should be lumped together, treated alike, and that settlement in one is not possible unless there were a settlement in all. This position ignores the reality that this is not a class action, each case is factually distinct, and each should be litigated as a separate action by the government. Plaintiff believes that the government should not just issue a blanket proclamation that all such cases are not amenable to ADR.

The government refers to the tax position at issue in this litigation as "abusive tax shelters." Making such a claim does not make it so. The tax position is not a listed tax shelter and is not prohibited by any specific law. Plaintiffs contend that the tax positions taken are legitimate, permissible under applicable laws, and that the judicial doctrines that the government is expected to invoke in an attempt to invalidate the tax positions are factually and legally inapplicable.

Defendant: The defendant views this case as an abusive tax shelter, one of many that involved the same pattern of multiple transactions designed to avoid tax on amounts realized from the sale of greatly appreciated assets, such as the real estate and stock involved in this case.

Though not applicable to this case, the IRS has made a settlement offer to similarly situated taxpayers who have not yet filed an action in the Tax Court, District Court, or the Court of Federal Claims. The defendant would give serious consideration to an offer from the plaintiffs to settle these consolidated cases on similar terms. Plaintiffs' counsel are aware of the IRS settlement offer through their representation of

other taxpayers. The terms of the IRS settlement offer are set forth in IRS Announcement 2005-80, 2005-46 I.R.B. 967, published on October 27, 2005.

(j) Trial:

Plaintiffs: A trial is likely here. For the reasons set forth herein, Plaintiffs request a trial date of August 28, 2006, which is more than a year from the date this action was filed.

Defendants: A trial is likely here. An expedited trial schedule would not be appropriate as extensive fact and expert discovery is necessary. Furthermore, a trial of this matter prior to the completion of the criminal proceedings in the Southern District of New York would be highly prejudicial to the United States. That trial is presently scheduled to begin on September 11, 2006.

(k) Electronic case management: This case has been designated as an ECF case.

(l) Other information:

Defendant: The defendant is concerned that plaintiffs' counsel may have a conflict of interest in representing the plaintiffs in this action. The name partner in plaintiffs' counsel's firm is William Goddard. As described above in paragraph 4(d), Goddard is a co-promoter of the tax shelter at issue here. It would seem, therefore, that the attorneys representing the plaintiff may have "personal interests" in the outcome of this litigation. See Model Rule 1.7.[4] Furthermore, the rule against "Lawyer as Witness"

---

3/ The Court of Federal Claims has adopted the American Bar Association's Model Rules of Professional Conduct as its Code of Professional Responsibility. RCFC 83.2(c)(2).

applies when the lawyer witness has a "personal interest" in the litigation. Model Rule 3.7(b).

The United States brings this concern to the Court's attention at this time mindful of the principle that failure to raise disqualification issues early in the litigation may constitute waiver of the issue. Bayside Federal Sav. & Loan v. United States, 57 Fed. Cl. 18 (2003). As a corollary, the United States is concerned with the possible prejudice to the government's interests if the individuals ultimately at risk here for substantial increases in their tax liabilities might at a later date request delays in these proceedings due to a "discovery" of their attorney's conflict of interest and their desire to obtain new representation.

Plaintiff: Mr. Goddard is a transactional attorney who represented Plaintiffs by assisting in the preparation of the documentation of the tax transactions that are at issue in this action. Mr. Goddard is not a trial lawyer and is not representing the Plaintiffs in this action. Notably, the government has not presented any facts that indicate that the goals of Plaintiffs and those of Mr. Goddard are in conflict.

The trial lawyers in this action were not involved in the transactions at issue in this action. There is no issue of trial counsel concurrently being called as a percipient witness in this action.

Goddard LLP and all of the attorneys involved in the litigation of this action are aware of their ethical obligations. There are presently no conflicts of interest that affect the representation of Plaintiffs in this action. Should such a conflict arise, Plaintiffs' counsel will act accordingly.

¶ 5

Discovery Plan:

Plaintiffs: Plaintiffs propose the following discovery plan leading to the requested trial date of August 28, 2006:

| | |
|---|---|
| Fact Discovery Closes: | May 26, 2006 |
| Experts Disclosed: | June 9, 2006 |
| Rebuttal Experts Disclosed: | July 3, 2006 |
| Expert Discovery Closes: | July 28, 2006 |
| Trial Date: | August 28, 2006 |

Plaintiffs oppose a further delay in this action and oppose the stay proposed by the government. If a stay is granted, Plaintiffs do not believe it appropriate for the government to unilaterally conduct discovery that it can then freely use in a criminal trial, while at the same time arguing that Plaintiffs should not be permitted to engage in discovery that the government contends could be used at a criminal trial. If the Court were to grant the stay requested by the government, Plaintiffs contend that there should be no discovery by any parties. If the Court were inclined to permit third-party discovery as requested by the government, that discovery should not restricted solely to use in this action to prevent further abuse by the government.

Defendant: As discussed above in paragraph 4(d) the United States believes that this proceeding should be stayed pending the conclusion of the criminal proceedings in Stein. If any discovery is permitted prior to the conclusion of the those proceedings, it should be limited to document discovery of non-parties. To date, the following non-parties have been identified by the United States: (1) Franklin Select Realty Trust, (2) Value Enhancement Fund III, LLC, and (3) Lend Lease Real Estate Investments, Inc.

As also stated above in paragraph 4(d), the transaction at issue here is a complex tax shelter involving multiple entities created by, or on behalf of, four individuals acting in concert. Plaintiff's discovery proposal is woefully inadequate for this type of case and this particular case. In addition to the individuals behind the entities participating in this transaction, there are also several non-party participants. In addition to fact discovery, expert witnesses are important to this case. A discovery period of 12 months would be the minimum normally recommended for this type of tax shelter. Under the RCFC discovery rules, the earliest date to commence discovery is the Early Meeting of Counsel, which in this case took place on January 6, 2006. Plaintiff's proposed discovery schedule would be inappropriate even if there were not parallel criminal proceedings to consider.

Respectfully submitted,

| | |
|---|---|
| 1/19/2006 | s/Morgan R. Evans |
| Date | MORGAN R. EVANS<br>Goddard LLP<br>18500 von Karman Ave., Suite 400<br>Irvine, California 92612<br>(949) 253-0500<br><br>Counsel for Plaintiff |
| 1/19/2006 | s/Robert J. Higgins |
| Date | ROBERT J. HIGGINS<br>Attorney of Record<br>U.S. Department of Justice<br>Tax Division<br>Court of Federal Claims Section<br>Post Office Box 26<br>Ben Franklin Post Office<br>Washington, D.C. 20044<br>(202) 307-6580<br><br>EILEEN J. O'CONNOR<br>Assistant Attorney General<br>DAVID GUSTAFSON<br>Acting Chief, Court of Federal Claims Section |
| 1/19/2006 | s/David Gustafson |
| Date | Of Counsel<br><br>Attorneys for Defendant |